IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In the Matter of:

THE JAMES A. AND CAROL A. MAY LIVING TRUST

No. 1 CA-CV 25-0392 PB

FILED 02-17-2026

Appeal from the Superior Court in Maricopa County
No. PB2021-051263
The Honorable Vanessa N. Smith, Judge *Pro Tempore*

**VACATED AND REMANDED**

COUNSEL

Spencer Fane LLP, Phoenix
By Kelly C. Mooney, Jessica A. Gale, Serena O'Neill
*Co-Counsel for Appellant Charitable Beneficiary Legacy Global Foundation*

Murphy Law Firm Inc., Phoenix
By Thomas J. Murphy (argued)
*Co-Counsel for Appellant Charitable Beneficiary Legacy Global Foundation*

Tiffany & Bosco, Phoenix
By Nora L. Jones, Sarah K. Deutsch (argued), Vanessa R. Heim
*Counsel for Appellee Shannon May*

## OPINION

Presiding Judge Daniel J. Kiley delivered the opinion of the Court, in which Judge D. Steven Williams and Judge Cynthia J. Bailey joined.

**K I L E Y**, Judge:

¶1   Parties to a dispute are generally not required to participate in a binding alternative dispute resolution ("ADR") process unless they have agreed to do so. As an exception to this general rule, Arizona law permits trustors to require trust beneficiaries and others to participate in ADR to settle disputes over "the administration or distribution of the trust." A.R.S. § 14-10205. The trust documents in this case include such an ADR provision.

¶2   The question presented is whether the ADR provision governs a dispute over whether the trustor's amendment to the trust was the product of undue influence. Is a dispute over the *validity* of an amendment, in other words, a dispute over the "administration or distribution of the trust"? We hold that it is not.

## FACTS AND PROCEDURAL HISTORY

¶3   Carol May and her husband James May established the James A. and Carol A. May Living Trust (the "Trust") in 2003. Carol and James were co-trustees of the Trust.[1]

¶4   In 2009, Carol and James amended the trust documents via a document (the "2009 Amendment") which, among other things, designated two of their adult children, Shannon May and Michael May, as successor co-trustees. The 2009 Amendment named Shannon, Michael, and a third child, Erin May, as beneficiaries; a fourth child, Stephen May, was expressly excluded.

¶5   The 2009 Amendment contained an ADR provision, found at Article 3, § 9, authorizing the appointment of a third party to serve as "Special Co-Trustee" to resolve disputes among trustees and/or beneficiaries. Article 3, § 9 reads in pertinent part as follows:

---

[1] In order to avoid confusion, we respectfully refer to members of the May family by their first names.

> The Special Co-Trustee may unilaterally resolve any dispute, claim or conflict between beneficiaries . . . between a beneficiary and a trustee, or between trustees. Such resolution shall be binding on all parties to [the] Trust and shall not be subject to review.
>
> No one may file or instigate a claim in a court of law without first submitting the claim to the Special Co-Trustee for resolution[.] . . . The Special Co-Trustee may submit the claim or dispute for mediation and/or binding arbitration. Subsequent to his or her review, the Special Co-Trustee may give any claimant the authority to file and maintain an action in a court of law. Whenever a dispute, conflict, or claim involves an interpretation or construction of our Trust Agreement, the Special Co-Trustee may file an action in a court of competent jurisdiction for the interpretation and construction of such Trust Agreement, or the Special Co-Trustee may instruct our Trustee to do so.

**¶6**        James died in 2017.

**¶7**        In 2019, Carol amended the trust documents via the "2019 Amendment" which, among other things, removed Michael, Shannon, and Erin as beneficiaries of the Trust and named a new entity, the May Family Foundation, as its principal beneficiary. The May Family Foundation was established as a donor-advised fund of Legacy Global Foundation ("Legacy"). Attorney Richard E. Durfee is Legacy's founder and served as its chief executive officer until his daughter succeeded him in that position.

**¶8**        Carol died in 2021.

**¶9**        This case began when Stephen challenged the amendments to the Trust, alleging, among other things, that the 2019 Amendment was "void . . . because it was a product of Attorney Durfee's undue influence over Carol." Stephen claimed that Durfee improperly induced the aged and unwell Carol to amend the trust documents in 2019 to leave the bulk of the Trust's assets to Legacy, a foundation in which Durfee's family had a financial interest. Shannon, too, argued that the 2019 Amendment should be "set aside . . . as a product of undue influence." In response, Legacy maintained that the 2019 Amendment was validly executed and enforceable.

**¶10**        In March 2023, Shannon and Michael, as designated successor co-trustees, appointed Jerome Elwell as Special Co-Trustee under Article 3,

§ 9 of the 2009 Amendment to resolve the "dispute regarding the enforceability of the [2019 Amendment]." The following month, Elwell notified all the parties of his appointment as Special Co-Trustee. Opining that "resolution" of the parties' "dispute regarding the enforceability of the [2019 Amendment] . . . falls squarely within the authority of Special Co-Trustee[,]" Elwell directed the parties to submit to him "a detailed memorandum of law . . . addressing their position on the validity/enforceability of the [2019 Amendment]."

¶11        Upon receipt of Elwell's notice, Legacy filed a petition (the "Petition") seeking a declaration, *inter alia*, that A.R.S. § 14-10205 does not allow trustors to require beneficiaries to submit challenges to the validity of trust documents to binding ADR. Accordingly, Legacy argued, Shannon's challenge to the 2019 Amendment was for the court, not the Special Co-Trustee, to resolve. Shannon moved to dismiss Legacy's Petition, asserting that the Special Co-Trustee appointed under Article 3, § 9 of the 2009 Amendment was authorized to resolve her challenge to the 2019 Amendment.

¶12        After oral argument, the superior court accepted Shannon's argument that her challenge to the 2019 Amendment must be resolved in the manner prescribed by Article 3, § 9 of the 2009 Amendment. The court found that Shannon's claim was not a challenge to the validity of the 2019 Amendment but, instead, merely a challenge to the manner in which the 2019 Amendment distributed the trust assets. The 2019 Amendment "only amends . . . the distribution plan" of the 2009 Amendment, the court held, and so Shannon's challenge to the amendment fell within the ambit of A.R.S. § 14-10205 as a dispute over the "administration or distribution" of the Trust. The court therefore dismissed the Petition and entered partial final judgment. *See* Ariz. R. Civ. P. 54(b).

¶13        Legacy timely appealed. We have jurisdiction under A.R.S. § 12-2101(A).

**DISCUSSION**

¶14        Section 14-10205 authorizes trustors to require beneficiaries and other interested parties to submit disputes involving "administration or distribution of the trust" to binding ADR. A.R.S. § 14-10205 ("A trust instrument may provide mandatory, exclusive and reasonable procedures to resolve issues between the trustee and interested persons or among interested persons with regard to the administration or distribution of the trust."). The superior court determined that because the 2019 Amendment

changed the beneficiaries of the Trust, Shannon's challenge to the 2019 Amendment constituted a dispute over the "administration and distribution" of the Trust under A.R.S. § 14-10205. Accordingly, the court concluded, Shannon's challenge must be resolved by the Special Co-Trustee under Article 3, § 9 of the 2009 Amendment. Legacy argues the superior court erred by determining that the 2019 Amendment's validity was a proper subject for binding ADR under A.R.S. § 14-10205. We review issues of statutory interpretation *de novo. Aroca v. Tang Inv. Co. LLC*, 259 Ariz. 302, 306, ¶ 12 (2025).

**¶15**        We begin by rejecting the superior court's determination that Shannon's claim amounted to nothing more than a challenge to the 2019 Amendment's "distribution" of the Trust's assets. While it is true, as the court found, that the 2019 Amendment changed the Trust's beneficiaries, Shannon challenged more than simply the manner in which the 2019 Amendment distributed trust assets. Instead, Shannon alleged that the 2019 Amendment was void because Carol's will was overborne when she executed it. Shannon's claim is, therefore, a challenge to the validity of the 2019 Amendment, not merely to its distribution of trust assets.

**¶16**        To determine whether Shannon's challenge to the 2019 Amendment is subject to the ADR process set forth in Article 3, § 9 of the 2009 Amendment, we must decide whether a challenge to the validity of a trust amendment constitutes a dispute over "the administration or distribution of the trust" under A.R.S. § 14-10205.

**¶17**        Shannon argues that this Court "must liberally construe [Section] 14-10205 . . . to make effective [the trustors'] intent" that disputes over the Trust be resolved under the ADR provisions of Article 3, § 9 of the 2009 Amendment. Further, she asserts, Arizona public policy, which "strongly favors ADR," compels us to "resolve any doubt about arbitrability in favor of ADR."

**¶18**        "Although it is commonly said that the law favors arbitration, it is more accurate to say that the law favors arbitration of disputes that the parties have agreed to arbitrate." *S. Cal. Edison Co. v. Peabody Western Coal Co.*, 194 Ariz. 47, 51, ¶ 11 (1999). The presumption in favor of arbitration applies, therefore, when contracting parties who agreed to an arbitration clause dispute the clause's scope. *See Granite Rock Co. v. Int'l Broth. of Teamsters*, 561 U.S. 287, 298 (2010) ("[W]here . . . parties concede that they have agreed to arbitrate *some* matters pursuant to an arbitration clause, the law's permissive policies in respect to arbitration counsel that any doubts concerning the scope of arbitral issues should be resolved in favor of

arbitration." (citation modified)). This principle does not apply here, however, because neither Shannon nor Legacy ever agreed to Article 3, § 9 of the 2009 Amendment. Instead, it was the trustors, Carol and James, who added the ADR provision to the trust documents. Because the parties here never agreed to submit disputes over the Trust to arbitration, we reject Shannon's request to construe Section 14-10205 expansively with an eye toward bringing their dispute within the scope of the trust documents' ADR provision.

¶19　　　　Instead, our interpretation of A.R.S. § 14-10205 begins, as with all statutes, with "the plain meaning of the legislature's chosen words[.]" *Welch v. Cochise Cnty. Bd. of Supervisors,* 251 Ariz. 519, 523, ¶ 11 (2021). Section 14-10205 limits the type of disputes that a trust beneficiary may be required to submit to binding ADR to those involving "administration" of a trust or "distribution" of its assets. Because the Arizona Trust Code does not define those terms, *see generally* A.R.S. §§ 14-10101 *et seq.*, we interpret them according to their ordinary meaning, looking to the dictionary for guidance. *In re Drummond*, 257 Ariz. 15, 18, ¶ 7 (2024) ("Absent a statutory definition, courts generally give words their ordinary meaning and may look to dictionary definitions." (citation omitted)).

¶20　　　　Black's Law Dictionary defines "administration," in the context of administration of a trust, as "[a] judicial action in which a court undertakes the management and distribution of property." *Administration*, Black's Law Dictionary (12th ed. 2024). "Distribution," in turn, is defined in part as "[t]he act or process of apportioning or giving out" and, in the probate context, "the process of dividing an estate." *See Distribution*, Black's Law Dictionary (12th ed. 2024).[2] Neither of these terms is defined in a way that encompasses the threshold question of the validity of the trust instrument itself. On the contrary, "administration" and "distribution" both presuppose the validity of the trust documents. *See* A.R.S. § 14-10801 (a trust is "administer[ed] . . . in accordance with its terms and purposes"); *In re Estate of Ganoni*, 238 Ariz. 144, 146, ¶ 13 (App. 2015) (trust assets are distributed in accordance with "the terms of the trust"). We will not expand A.R.S. § 14-10205 to encompass a matter not included within its express terms. *Cicoria v. Cole*, 222 Ariz. 428, 431, ¶ 15 (App. 2009) ("Courts will not read into a statute something that is not within the manifest intent of the legislature as indicated by the statute itself, nor will the courts inflate, expand, stretch, or extend a statute to matters not falling within its express

_____

[2] The definitions found in the edition of Black's Law Dictionary that was current when A.R.S. § 14-10205 was enacted are not materially different. *See* Black's Law Dictionary (8th ed. 2004).

provisions."); *see also In re Wintersteen Revocation Trust Agreement*, 907 N.W.2d 785, 790-91 (S.D. 2018) (citing dictionary definition in holding that widow's challenge to the validity of deceased husband's amendment removing her as beneficiary was not a matter of trust "administration," and therefore her challenge was governed by one-year limitations statute applicable to suits to determine whether "a revocable trust or any amendment thereto . . . was valid[]," not by statute applicable to suits over "administration of the trust").

¶21        When construing a statute, courts "also consider statutes that are *in pari materia*—of the same subject or general purpose—for guidance[.]" *San Diego Gas & Electric Co. v. Ariz. Dep't of Revenue*, 259 Ariz. 105, 108, ¶ 11 (2025) (citation omitted). A separate provision of the Arizona Trust Code expressly distinguishes between "validity" and "administration." *See* A.R.S. § 14-10107(B) (providing that unless the terms of the trust otherwise provide, "the laws of the jurisdiction where the trust was executed determine the *validity* of the trust," while "the laws of descent and the law of the principal place of administration determine the *administration* of the trust." (emphases added)). The Arizona Trust Code's recognition that "validity" and "administration" are distinct further supports the conclusion that disputes over a trust instrument's validity are not included within the term "administration or distribution of the trust" as used in A.R.S. § 14-10205.

¶22        Shannon argues that Subsection C of A.R.S. § 14-10201 supports her position that the validity of a trust is a matter of trust "administration." That subsection of Section 14-10201 provides that "[a] judicial proceeding involving a trust may relate to any matter involving the trust's administration, including a request for instructions and an action to declare rights." A.R.S. § 14-10201(C). As Shannon correctly notes, an action to declare rights under a trust could include a challenge to the validity of trust documents. Because Subsection C of Section 14-10201 states that "trust administration . . . include[s] . . . an action to declare rights," Shannon reasons, the term "trust administration" necessarily includes challenges to the validity of trust documents.

¶23        In our view, Shannon reads too much into Subsection C of Section 14-10201. Section 14-10201 as a whole delineates the court's role in trust administration. The first two subsections of the statute provide that while a trust is generally "not subject to continuing judicial supervision," a court "may intervene in the administration of a trust to the extent its jurisdiction is invoked by an interested party or as provided by law." A.R.S. § 14-10201(A), (B). Subsection C makes clear that when a court intervenes

in trust administration as authorized by Subsection A, the court's adjudicative authority includes resolving "a request for instructions and an action to declare rights." A.R.S. § 14-10201(C). But nothing in Section 14-10201 purports to say that *every* action to declare rights *necessarily* falls under the rubric of "trust administration." The text of Section 14-10201 simply does not support Shannon's contention that Subsection C somehow compels the conclusion that every "action to declare rights" under a trust is necessarily a matter of "trust administration."

¶24 Courts from other jurisdictions have recognized that disputes over the validity of a trust instrument are to be resolved through the judicial process rather than binding ADR. *See Gibbons v. Anderson*, 575 S.W.3d 144, 148 (Ark. App. 2019) ("[W]here there is an allegation of undue influence or incompetency of the grantor in the execution of a trust agreement or an amendment thereto," the "validity" of the document "cannot" be "determined by arbitration."). In *Gibbons*, the trustor of a trust whose beneficiaries included his grandchildren amended the terms of his trust only seventeen days before he died. Two of his grandchildren challenged the amendment, alleging that the ailing trustor executed it while subjected to the "undue influence" of his daughter. The trial court rejected the successor trustees' motion to compel arbitration of the grandchildren's challenge to the amendment and, on appeal, the Arkansas Court of Appeals affirmed. After surveying statutes and case law from other jurisdictions – including Arizona's Section 14-10205 – the *Gibbons* court found that these authorities shared "the common theme" that "while a trust agreement may contain [an] arbitration provision, the arbitration provision cannot compel arbitration to determine the validity of the trust itself." *Id.* at 150. Finding these authorities instructive, the *Gibbons* court held that a claim that a trust amendment was the product of undue influence is a matter for a court, not an arbitrator, to decide. *Id.* at 148. Other jurisdictions have reached similar conclusions. *See* D. Daniel, "Alternative Dispute Resolution and the Uniform Trust Code – Colorado's Approach," 45 *American College of Trust and Estate Counsel Law Journal* 11, 12 (Fall 2019) (citing case law holding that "issues of validity, such as the decedent's capacity to make a will or trust, the genuineness of a will or trust, or execution formalities, are not proper subjects for arbitration"). Although not controlling, we find these cases persuasive.

¶25 Although a trust is not a contract, *see, e.g.*, *In re Naarden Trust*, 195 Ariz. 526, 530, ¶ 15 (App. 1999) (as amended), contract law also informs our determination that Shannon's challenge to the validity of the 2019 Amendment is an issue for the court, not the Special Co-Trustee, to resolve. *See Gibbons*, 575 S.W.3d at 148-49 (looking to "contract/arbitration

principles, statutes [and] precedent" when resolving dispute over validity of trust amendment even though "a trust agreement is not a contract"). Arizona law recognizes that a claim that a contract was the product of undue influence is not within the scope of a mandatory arbitration provision. A.R.S. § 12-3006(A) ("An agreement . . . to submit to arbitration any . . . controversy arising between the parties to the agreement is valid, enforceable and irrevocable *except on a ground that exists at law or in equity for the revocation of a contract.*" (emphasis added)); *Austin v. Austin*, 237 Ariz. 201, 206, ¶ 12 (App. 2015) ("Generally, *legal or equitable grounds for revoking any contract include allegations that the contract is void for lack of mutual consent,* consideration or capacity *or voidable for* fraud, *duress*, *lack of capacity*, mistake, or violation of a public purpose." (citation modified, emphasis added)). To interpret A.R.S. § 14-10205 in a like manner — to interpret the statute, in other words, to exclude from its scope challenges to the validity of a trust instrument on grounds of undue influence — would be consistent with contract law.

**¶26**      In support of her position that a challenge to the validity of a trust document is a challenge to the "administration or distribution" of the trust under A.R.S. § 14-10205, Shannon cites *In re Flores Revocable Tr.*, 1 CA-CV 19-0187, 2020 WL 632602 (Ariz. App. Feb. 11, 2020) (mem. decision). In *Flores,* three siblings alleged that their sister exerted undue influence over their deceased father to secure rights to a house that was owned by a trust their father had established. After a trial, the court found the siblings had not proven their undue influence claim, but nonetheless found that the sister had breached a fiduciary duty she owed as successor trustee of the trust. The court granted the siblings various forms of relief and awarded them attorney fees under A.R.S. § 14-11004, which authorizes an award of fees and expenses "that arise out of and that relate to the good faith defense or prosecution of a judicial or alternative dispute resolution proceeding involving the administration of the trust, regardless of whether the defense or prosecution is successful." On appeal, the *Flores* court affirmed the fee award. In so holding, the *Flores* court stated that the siblings' claim that their sister exercised undue influence over their father, though unsuccessful, was brought in good faith and that the claim "involve[d] the administration of the trust" within the meaning of A.R.S. § 14-11004. *Id.* at *4, ¶ 17 (citation modified). According to Shannon, *Flores* stands for the proposition that a claim to void a trust amendment on grounds of undue influence is "a claim involving trust administration."

**¶27**      As an unpublished memorandum decision, *Flores* is not precedential. *See* R. Ariz. Sup. Ct. 111(c)(1). In any event, the *Flores* court was construing A.R.S. § 14-11004 when it affirmed the trial court's award

of fees against a trustee who violated her fiduciary duty. Because the present case involves dissimilar facts and requires us to construe a different statute, *Flores* does not bolster Shannon's position.

**¶28**		Shannon also relies on *Jones v. Fink*, 1 CA-SA 10-0262, 2011 WL 601598 (Ariz. App. Feb. 22, 2011). Because *Jones* is an unpublished memorandum decision that was issued prior to January 1, 2015, it is not citable under applicable court rules, and we do not consider it. *See* R. Ariz. Sup. Ct. 111(c)(1)(C).

**¶29**		We hold that A.R.S. § 14-10205 does not empower trustors to adopt mandatory ADR provisions that deny trust beneficiaries their right to seek judicial resolution of claims challenging the validity of trust instruments on the basis of undue influence. Shannon's challenge to the 2019 Amendment is not subject to the provisions of Article 3, § 9 of the 2009 Amendment, and so the superior court erred in dismissing Legacy's Petition seeking a judicial determination that the 2019 Amendment is void. Whether Carol was subjected to undue influence when she executed the 2019 Amendment is a matter for the court, not the Special Co-Trustee, to determine.

**¶30**		Legacy raises other challenges to the dismissal of the Petition, including, *inter alia*, its claim that Shannon waived any right she may have had to compel ADR by participating in the underlying litigation. Because we hold that Shannon's challenge to the validity of the 2019 Amendment is not subject to the Trust's ADR provision, we do not address Legacy's alternative challenges to the dismissal of its petition.

## CONCLUSION

**¶31**		We vacate the superior court's dismissal of Legacy's Petition and remand for further proceedings consistent with this opinion.

**¶32**		Legacy requests an award of attorney fees under A.R.S. § 14-1105. Because no party engaged in unreasonable conduct in this appeal, A.R.S. § 14-1105 does not apply. Legacy may recover costs on appeal upon compliance with ARCAP 21.